IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

MAXIM HEALTHCARE STAFFING )
SERVICES, INC. )
                     )
    Plaintiff, )
                     )   Docket No. _____
vs. )
                     )
TEHUM CARE SERVICES, INC. F/K/A )
CORIZON HEALTH, INC.; and CHS TX, )
INC; YESCARE CORP., )
                     )
    Defendants. )

## VERIFIED COMPLAINT

COMES NOW Plaintiff, Maxim Healthcare Staffing Services, Inc. ("Plaintiff" or "Maxim"), by and through its undersigned Counsel, and files this Verified Complaint against Defendants, Tehum Care Services, Inc. f/k/a Corizon Health, Inc. ("TCS"), CHS TX, Inc. ("CHS TX"), and YesCare Corp. ("YesCare") and together with TCS and CHS TX, the "Defendants" or "Corizon") and respectfully states as follows:

### I. PARTIES

1. On November 28, 2012, Maxim Healthcare Services, Inc. ("Maxim Healthcare") and Corizon, Inc. executed that certain *Master Services Agreement – Per Diem*[1] (together with all amendments, statements of work, exhibits, schedules and riders, the "MSA") which contract forms the basis of this action.

---

[1] A true and correct copy of which is attached hereto as **Exhibit 1** and is incorporated herein by reference.

744927                                 1

Case 3:23-cv-00018   Document 1   Filed 01/10/23   Page 1 of 19 PageID #: 1

2. Maxim Healthcare assigned the MSA to its subsidiary, Maxim, effective January 1, 2020 and notified Corizon via a letter to Corizon, Inc. dated June 24, 2021.[2]

3. Maxim is a Maryland corporation with its principal place of business located at 7227 Lee DeForest Drive, Columbia, Maryland 21046. Maxim is a wholly owned subsidiary of Maxim Healthcare.

4. Corizon, Inc., is or was a Missouri corporation originally incorporated on November 8, 1982 as Correctional Medical Systems, Inc. Upon information and belief, the name of this corporation was amended to Correctional Medical Services, Inc. in July of 1994 and later again amended to Corizon, Inc. in June of 2011. Corizon, Inc. was converted to a limited liability company known as Corizon, LLC effective December 31, 2013.

5. On or about June 27, 2022, Corizon, LLC merged into Corizon Health, Inc. ("<u>CHI</u>") with CHI remaining as the surviving corporation.

6. CHI was originally a Delaware corporation that converted to a Texas corporation on or about April 28, 2022.

7. On or about May 3, 2022, CHI underwent a divisional merger, which it survived while also creating a new Texas corporation, CHS TX.

8. CHS TX inherited all of CHI's employees, all of CHI's active contracts, and nearly all of CHI's cash, equipment, real estate, and other assets. Both pre-division CHI and CHS TX were owned by the same sole-shareholder, and CHS TX also inherited CHI's CEO and Chair, Sara Tirschwell.

9. On or about June 1, 2022, CHI changed its name to TCS. TCS is a Texas

---

[2] A true and correct copy of which is attached hereto as **Exhibit 2** and is incorporated herein by reference.

corporation with its principal place of business is located at 103 Powell Court, Suite 104, Brentwood, Tennessee 37027-5559. TCS may be served through its registered agent, C T Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

10. CHS TX's principal place of business is located at 205 Powell Place, Suite 104, Brentwood, Tennessee 37027-7522. CHS TX may be served through its registered agent, C T Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

11. After the divisional merger, YesCare, a Texas corporation owned by CHS TX's CEO, acquired CHS TX, and CHS TX began informally doing business under its parent company's name.

12. YesCare may be served through its registered agent, C T Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## II. JURISDICTION AND VENUE

13. The allegations contained in the foregoing paragraphs are incorporated herein by reference as if specifically re-alleged herein.

14. This Court has jurisdiction over the parties and this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties, and the amount in dispute exceeds $75,000.00.

15. Venue is proper in this district pursuant to, *inter alia*, 28 U.S.C. § 1391(b) because (1) a substantial part of the events or omissions giving rise to Maxim's claims for breach of contract took place in this judicial district, (2) the contracts that are at issue in this Complaint are governed and construed under the laws of the State of Tennessee, and (3) the parties herein expressly consented to jurisdiction of the state or federal courts located in Tennessee pursuant to the terms

of said contracts.[3]

## III. GENERAL ALLEGATIONS

16. The allegations contained in the foregoing paragraphs are incorporated herein by reference as if specifically re-alleged herein.

17. Maxim is in the business of operating a supplemental healthcare staffing agency in which they employ various healthcare professionals for temporary placement at customer facilities to provide healthcare services.

18. Corizon has been a provider of correctional healthcare services throughout the United States at all times relevant herein.

### A. The MSA

19. On November 28, 2012, Maxim and Corizon, Inc. executed and entered into the MSA effective as of October 22, 2012, pursuant to which Maxim would, upon request by Corizon, Inc., provide licensed healthcare providers as specified by Corizon, Inc. for supplemental staffing services to the extent qualified providers were available.[4]

20. Pursuant to Section 1.1 of the MSA, the MSA would be in effect for an initial term of one (1) year and thereafter continue indefinitely until terminated by either party with advance written notice.[5]

21. The types of healthcare providers furnished by Maxim to Corizon pursuant to the MSA have included and continued to include, but were not limited to, registered nurses ("RN"), licensed practical nurses ("LPN"), certified medical assistants ("CMA"), medication aides,

---

[3] *See* MSA (Ex. 1), § 6.11.

[4] *Id.* at § 2.1.

[5] *Id.* at §§ 1.1-1.2.

certified nurse assistants ("CNA"), infusion nurses, administrative assistants, phlebotomists, dental assistants, radiology technicians, advanced registered nurse practitioners ("ARNP") and physician's assistants ("PA").

22. Pursuant to Article 5 of the MSA healthcare personnel would be supplied by Maxim to Corizon at rates specified in riders or amendments to the MSA.[6]

23. Maxim and Corizon have periodically entered into and executed written riders and amendments, described in more detail below, establishing staffing rates in various state or local markets or across all facilities subsequent to the execution of the MSA.

24. Pursuant to the MSA, payments not received within thirty (30) days from the applicable postmark date will accumulate interest, until paid, at the rate of one and one-half percent (1.5%) per month on the unpaid balance or the maximum rate permitted by applicable law, whichever is less.[7]

25. Pursuant to the MSA in the event either party is required to obtain legal assistance to enforce its rights under the MSA, the prevailing party is entitled to receive from the other party, in addition to all other sums due, reasonable attorney's fees, court costs and expenses incurred in enforcing its rights and/or collecting its monies.[8]

26. Pursuant to Section 6.2 of the MSA, a party to the MSA may, without the written consent of the other party, assign the MSA to an entity owned by or under common control with assignor or in connection with any acquisition of all of the assets or capital stock of a party.[9] If

---

[6] *Id.* at § 5.1.

[7] *Id.* at § 5.3.

[8] *Id.* at § 6.4.

[9] *Id.* at § 6.2.

such an assignment occurs, the MSA specifies that the assigning party will provide notice of such transaction to the other party and remain fully responsible for compliance with all of the terms of the MSA.[10]

27. Pursuant to the terms of the MSA, Maxim Healthcare assigned the MSA to its subsidiary, Maxim, effective January 1, 2020, and notified Corizon of same via a letter to Corizon, Inc. addressed to the MSA Section 6.5 notice mailing address on or about June 24, 2021.[11]

28. Upon information and belief, Corizon, Inc. has not provided notice of an assignment to Maxim.

29. Despite the lack of written notice required by the terms of the MSA, TSC, CHS TX, and YesCare constitute successors in interest to and/or assignees of Corizon, Inc. as evidenced by, among other things, their course of dealing with Maxim.

30. As of the filing of this Verified Complaint, neither Maxim nor Corizon terminated the MSA.

**1) Michigan Riders**

31. In February 2013, Corizon and Maxim respectively executed that certain *Rider to Master Services Agreement Maxim Healthcare Services, Inc. Staffing Rates for Corizon, Inc.* for the Michigan market ("Michigan Rider") effective as of January 10, 2013.[12]

32. Among other things, the Michigan Rider set hourly staffing rates for CNA, CMA, Dental Assistant, LPN, RN and ARNP/ PA services provided by Maxim to Corizon.[13]

---

[10] *Id.; see also id.* at § 6.5.

[11] *See* Ex. 2.

[12] A true and correct copy of the Michigan Rider is attached hereto as **Exhibit 3** and is incorporated herein by reference.

[13] *E.g., id.* at Michigan Rider (Ex. 3) at §§ 1.2, 1.5-1.7.

6

33. Pursuant to the Michigan Rider, Maxim was to supply and has supplied periodic invoicing to Corizon for the healthcare staffing services Maxim provided to Corizon.[14]

34. The Michigan Rider remains effective for Michigan staffing rates for ARNP/NP and Dental Assistant services, with annual adjustments, from its effective date through the date of the filing of this Verified Complaint.

35. In March 2021, Corizon and Maxim executed that certain *Rider to Master Services Agreement Maxim Healthcare Services, Inc. Staffing Rates for Corizon, Inc.* for the Michigan market ("Michigan 2021 Rider") effective as of March 2, 2021.[15] The Michigan 2021 Rider, among other things, revised the hourly staffing rates under the Michigan Rider for certain healthcare personnel, specifically CNA, CMA, RN, and LPN staffing and additionally established hourly rates for LCSW (licensed clinical social worker) and LMSW (licensed master social worker) staffing.[16]

36. Pursuant to the Michigan 2021 Rider, Maxim was to supply and has supplied periodic invoicing to Corizon for the healthcare staffing services Maxim provided to Corizon.[17]

37. The Michigan 2021 Rider remains effective and applicable to healthcare staffing services provided by Maxim to Corizon as of the filing of this Verified Complaint.

2) **Infusion Rider**

38. In January 2020, Corizon and Maxim executed that certain *Rider to Master Services Agreement Maxim Healthcare Services, Inc. Staffing Rates for Corizon, Inc.* establishing hourly

---

[14] *Id.* at § 1.8.

[15] A true and correct copy of the Michigan 2021 Rider is attached hereto as **Exhibit 4** and is incorporated herein by reference.

[16] *E.g., id.* at §§ 1.2, 1.5, 1.6.

[17] *Id.* at § 1.7.

rates for local and travel assignments for Infusion RN services ("Infusion Rider") effective as of January 17, 2020.[18]

39. Pursuant to the Infusion Rider, hourly staffing rates for Infusion RN services were set for local and travel assignments.[19]

40. Pursuant to the Infusion Rider, Maxim was to supply and has supplied periodic invoicing to Corizon for healthcare staffing services provided by Maxim to Corizon.[20]

41. As of the filing of this Verified Complaint, the Infusion Rider remains effective and applicable to healthcare staffing services provided by Maxim to Corizon.

3) **Wyoming Rider**

42. In July 2020, Maxim and Corizon executed that certain *Rider to Master Services Agreement Maxim Healthcare Services, Inc. Staffing Rates for Corizon, Inc.*[21] establishing hourly rates for local and travel assignments for RN and LPN services for all Wyoming sites managed by Corizon ("Wyoming Rider") effective as of July 23, 2020.[22]

43. Pursuant to the Wyoming Rider, Maxim was to supply and has supplied periodic invoicing to Corizon for the healthcare staffing services it provided to Corizon.[23]

44. The Wyoming Rider remains effective and applicable to healthcare staffing services provided by Maxim to Corizon as of the filing of this Verified Complaint.

---

[18] A true and correct copy of the Infusion Rider is attached hereto as **Exhibit 5** and is incorporated herein by reference.

[19] *E.g.,* Infusion Rider (Ex. 5) at §§ 1.2, 1.5-1.7, 1.9.

[20] *Id.* at § 1.10,

[21] A true and correct copy of the Wyoming Rider is attached hereto as **Exhibit 6** and is incorporated herein by reference.

[22] *E.g., id.* at § 1.1, 1.2, 1.4, 1.5.

[23] *See id.* at § 1.6.

8

45. In October 2021, Corizon and Maxim agreed upon an hourly rate for LPN services to be provided by two (2) LPNs identified by name as set forth in emails between one another's representatives (collectively, the "Wyoming Email Agreement").[24]

46. To the extent the Maxim provided staffing to Corizon pursuant to the Wyoming Email Agreement, Maxim has provided invoices to Corizon for the same.

**4) Idaho Riders**

47. In July of 2020, Corizon and Maxim executed that certain *Rider to Master Services Agreement Maxim Healthcare Services, Inc. Staffing Rates for Corizon, Inc.*[25] establishing hourly rates for local and travel assignments for RN and LPN services for all Idaho sites managed by Corizon ("Idaho 2020 Rider") effective as of April 17, 2020.[26]

48. Pursuant to the Idaho 2020 Rider, Maxim was to supply and has supplied periodic invoicing to Corizon for the healthcare staffing services it provided to Corizon.[27]

49. The Idaho 2020 Rider remained effective and applicable to healthcare staffing services provided through and until execution of a new rider on September 7, 2021.

50. In September 2021, Corizon and Maxim executed that certain *Rider to Master Services Agreement Maxim Healthcare Services, Inc. Staffing Rates for Corizon, Inc.* for Idaho sites managed by Corizon ("Idaho 2021 Rider") effective as of September 7, 2021.[28]

---

[24] True and correct copies of the emails are attached hereto as collective **Exhibit 7** and are incorporated herein by reference.

[25] A true and correct copy of the Idaho 2020 Rider is attached hereto as **Exhibit 8** and is incorporated herein by reference.

[26] *E.g., id.* at § 1.1, 1.2, 1.4, 1.5.

[27] *See id.* at § 1.6.

[28] A true and correct copy of the Idaho 2021 Rider is attached hereto as **Exhibit 9** and is incorporated herein by reference.

51. The Idaho 2021 Rider revised and set hourly staffing rates for RN and LPN staffing.[29]

52. Pursuant to the Idaho 2021 Rider, Maxim was to supply and has supplied periodic invoicing to Corizon for the healthcare staffing services it provided to Corizon.[30]

53. The Idaho 2021 Rider remains effective and applicable to healthcare staffing provided by Maxim to Corizon as of the filing of this Verified Complaint.

**5) Florida Rider**

54. In July of 2020, Corizon and Maxim executed that certain *Rider to Master Services Agreement Maxim Healthcare Services, Inc. Staffing Rates for Corizon, Inc.*[31] establishing hourly rates for local and travel assignments for RN and LP services for Florida sites managed by Corizon ("Florida Rider") and which Florida Rider was effective as of July 28, 2020.[32]

55. Pursuant to the Florida Rider, Maxim was to supply and has supplied periodic invoicing to Corizon for the healthcare staffing services it provided to Corizon.[33]

56. The Florida Rider remains effective and applicable to healthcare staffing services provided by Maxim to Corizon as of the filing of this Complaint.

**6) New Mexico Riders**

57. In August of 2020, Maxim and Corizon executed that certain *Rider to Master*

---

[29] *E.g., id.* at §§ 1.2, 1.4, 1.5.

[30] *See id.* at § 1.6.

[31] A true and correct copy of the Florida Rider is attached hereto as **Exhibit 10** and is incorporated herein by reference.

[32] *E.g., id.* at §§ 1.1, 1.2, 1.4, 1.5.

[33] *See id.* at § 1.6.

*Services Agreement Maxim Healthcare Services, Inc. Staffing Rates for Corizon, Inc.*[34] establishing hourly rates for local and travel assignments for RN, LPN, CNA, CMA, and Med Tech services for New Mexico sites managed by Corizon ("New Mexico Rider") effective as of April 1, 2020.[35]

58. Pursuant to the New Mexico Rider, Maxim was to supply and has supplied periodic invoicing to Corizon for the healthcare staffing services it provided to Corizon.[36]

59. The New Mexico Rider remained effective for New Mexico staffing rates for all services provided in New Mexico outside of Bernalillo County, New Mexico and for all CNA, CMA and Med Tech services, regardless of location, from its effective date through the date of the filing of this Verified Complaint.

60. In early December of 2021, Corizon and Maxim executed that certain *Rider to Master Services Agreement Maxim Healthcare Services, Inc. Staffing Rates for Corizon, Inc.* for Bernalillo County, New Mexico ("Bernalillo Rider I") effective as of December 9, 2021.[37]

61. Bernalillo Rider I established the hourly standard and crisis rates for local RN services in Bernalillo County, New Mexico.[38]

62. Pursuant to the Bernalillo Rider I, Maxim was to supply and has supplied periodic invoicing to Corizon for the healthcare staffing services it provided to Corizon.[39]

---

[34] A true and correct copy of the New Mexico Rider is attached hereto as **Exhibit 11** and is incorporated herein by reference.

[35] *E.g., id.* at §§ 1.1, 1.2, 1.4, 1.5.

[36] *See id.* at § 1.6.

[37] A true and correct copy of the Bernalillo Rider I is attached hereto as **Exhibit 12** and is incorporated herein by reference.

[38] *Id.*

[39] *See id.* at § 1.10.

63. Bernalillo Rider I remained effective for standard and crisis local RN staffing rates for all services provided in Bernalillo County, New Mexico from its effective date to December 22, 2021, at which time the parties executed a second rider for Bernalillo County, New Mexico.

64. Specifically, in late December of 2021, Corizon and Maxim executed that certain *Rider to Master Services Agreement Maxim Healthcare Services, Inc. Staffing Rates for Corizon, Inc.* for Bernalillo County, New Mexico ("Bernalillo Rider II") effective as of December 22, 2021.[40]

65. Bernalillo Rider II established the hourly staffing standard and crisis rates for local and travel assignment RN and LPN services in Bernalillo County, New Mexico.[41]

66. Pursuant to the Bernalillo Rider II, Maxim was to supply and has supplied periodic invoicing to Corizon for the healthcare staffing services it provided to Corizon.[42]

67. Bernalillo Rider II remains effective and applicable to healthcare staffing services provided by Maxim to Corizon as of the filing of this Verified Complaint.

7) **Virginia Riverside Amendment**

68. In September of 2020, Corizon and Maxim executed that certain *Agreement Amendment*[43] pursuant to which the parties amended the MSA and established rates designated as "per diem" and "8+week contract" for RN, LPN and CNA staffing at services for the Riverside Regional Jail in North Prince George, Virginia ("Riverside Amendment") effective as of

---

[40] A true and correct copy of the Bernalillo Rider II is attached hereto as **Exhibit 13** and is incorporated herein by reference.

[41] *Id.*

[42] *See id.* at § 1.10.

[43] A true and correct copy of the Riverside Amendment is attached hereto as **Exhibit 14** and is incorporated herein by reference.

September 14, 2020.

69. The Riverside Amendment remains effective and applicable to healthcare staffing services provided by Maxim to Corizon as of the filing of this Verified Complaint.

8) **Missouri Rider**

70. In September of 2020, Corizon and Maxim executed that certain *Rider to Master Services Agreement Maxim Healthcare Services, Inc. Staffing Rates for Corizon, Inc.* ("Missouri Rider")[44] establishing hourly rates for local and travel assignments for RN, LPN and CNA/MA services for Missouri sites managed by Corizon effective as of September 17, 2020.[45]

71. Pursuant to the Missouri Rider, Maxim was to supply and has supplied periodic invoicing to Corizon for the healthcare staffing services it provided to Corizon[46]

72. The Missouri Rider remains effective and applicable to the healthcare staffing services provided by Maxim to Corizon as of the filing of this Verified Complaint.

9) **Medical Assistant Rider**

73. In December of 2020, Corizon and Maxim executed that certain *Rider to Master Services Agreement Maxim Healthcare Services, Inc. Staffing Rates for Corizon, Inc.* ("Medical Assistant Rider")[47] establishing hourly rates for local and travel assignments for Medical Assistant services provided for Corizon effective as of December 17, 2020.[48]

---

[44] A true and correct copy of the Missouri Rider is attached hereto as **Exhibit 15** and is incorporated herein by reference.

[45] *E.g., id.* at §§ 1.1, 1.2, 1.4, 1.5.

[46] *See id.* at § 1.6.

[47] A true and correct copy of the Medical Assistant Rider is attached hereto as **Exhibit 16** and is incorporated herein by reference.

[48] *E.g., id.* at §§ 1.1, 1.2, 1.4-1.7, 1.9.

74.  Pursuant to the Medical Assistant Rider, Maxim was to supply and has supplied periodic invoicing to Corizon for the healthcare staffing services it provided to Corizon.[49]

75.  The Medical Assistant Rider remains effective and applicable to the healthcare staffing services provided by Maxim to Corizon as of the filing of this Verified Complaint.

**10) January 2021 Rider**

76.  In February of 2021, Corizon and Maxim executed that certain *Rider to Master Services Agreement Maxim Healthcare Services, Inc. Staffing Rates for Corizon, Inc.* ("January 2021 Rider")[50] establishing hourly rates for local and travel assignments for RN and LPN services and local CNA services provided for Corizon effective as of January 29, 2021.[51]

77.  Pursuant to the January 2021 Rider, Maxim was to supply and has supplied periodic invoicing to Corizon for the healthcare staffing services it provided to Corizon.[52]

78.  The January 2021 Rider remains effective and applicable to the healthcare staffing services provided by Maxim to Corizon as of the filing of this Verified Complaint.

**11) Kansas Rider**

79.  In February of 2021, Corizon and Maxim executed that certain *Rider to Master Services Agreement Maxim Healthcare Services, Inc. Staffing Rates for Corizon, Inc.* ("Kansas Rider")[53] establishing hourly rates for local RN, LPN and Certified Medicine Aide staffing

---

[49] *See id.* at § 1.10.

[50] A true and correct copy of the January 2021 Rider is attached hereto as **Exhibit 17** and is incorporated herein by reference.

[51] *E.g., id.* at §§ 1.1, 1.2, 1.4-1.7, 1.9.

[52] *See id.* at § 1.10.

[53] A true and correct copy of the Kansas Rider is attached hereto as **Exhibit 18** and is incorporated herein by reference.

14

Case 3:23-cv-00018   Document 1   Filed 01/10/23   Page 14 of 19 PageID #: 14

services provided to Kansas sites managed by Corizon effective as of February 4, 2021.[54]

80. Pursuant to the Kansas Rider, Maxim was to supply and has supplied periodic invoicing to Corizon for the healthcare staffing services it provided to Corizon.[55]

81. The Kansas Rider remains effective and applicable to the healthcare staffing services provided by Maxim to Corizon as of the filing of this Verified Complaint.

**12) July 2021 Amendment**

82. In July of 2021, Corizon and Maxim executed that certain *Agreement Amendment* pursuant to which the parties amended the MSA to establish local and travel hourly rates for local RN, LPN, CNA, Medicine Assistant, Administrative Assistant, Phlebotomist, Dental Assistant and Radiology Technician staffing services provided to sites managed by Corizon ("July 2021 Amendment") effective as of July 1, 2021.[56]

83. The July 2021 Amendment remains effective and applicable to the healthcare staffing services provided by Maxim to Corizon as of the filing of this Verified Complaint.

**B. Defendants' Failure to Pay Invoiced Amounts for Services Provided**

84. Beginning in January 2021, Corizon began failing to pay for healthcare staffing services provided by Maxim to Corizon.

85. Maxim demanded payment from Corizon on multiple occasions throughout 2021 and 2022.

---

[54] *E.g., id.* at §§ 1.1, 1.2, 1.4, 1.5.

[55] *See id.* at § 1.10.

[56] A true and correct copy of the July 2021 Amendment is attached hereto as **Exhibit 19** and is incorporated herein by reference.

86. With the exception of limited and sporadic payments, Corizon failed and refused to pay its delinquent obligations under the MSA to Maxim.

87. As of December 15, 2022, Corizon owes Maxim $4,937,284.91 for services Maxim provided to Corizon pursuant to the MSA, not including interest and attorneys' fees[57] Maxim is entitled to pursuant to the provisions of the MSA (collectively, the "Obligations").

88. Corizon has repeatedly acknowledged to Maxim that it owes Maxim $3,112,922.59 under the MSA represented by 819 unpaid invoices (the "Undisputed Obligations") not including interest and attorneys' fees Maxim is entitled to pursuant to the provisions of the MSA.

89. Upon information and belief, Corizon disputes the remaining Obligations of $1,824,362.32 (the "Disputed Obligations") not including interest and attorneys' fees Maxim is entitled to pursuant to the provisions of the MSA.

90. As of the date of the filing of this Verified Complaint, Corizon failed to pay the Obligations owed to Maxim.

91. Corizon is obligated for the Obligations owed under the MSA, plus accruing interest, collection costs, attorneys' fees, and the costs of this action.

## IV. REQUEST FOR RELIEF

## COUNT I - BREACH OF CONTRACT

92. The allegations contained in the foregoing paragraphs are incorporated herein by reference as if specifically re-alleged herein.

93. Corizon is a party to a valid and enforceable contract with Maxim memorialized in the MSA.

94. In accordance with the MSA, Maxim provided Corizon with healthcare staffing

---

[57] *See* MSA (Ex. 1), §§ 5.3, 6.4.

16

services, which Corizon readily accepted and utilized in various correctional facilities throughout the United States.

95. Maxim provided Corizon with periodic invoicing for the healthcare staffing services it provided to Corizon.

96. Beginning in January 2021, Corizon began failing to pay for healthcare staffing services provided by Maxim to Corizon.

97. Maxim demanded payment from Corizon on multiple occasions in 2021 and 2022.

98. With the exception of limited and sporadic payments, Corizon failed and refused to pay its delinquent obligations under the MSA to Maxim.

99. As of December 15, 2022, Corizon owes Maxim $4,937,284.91 for services Maxim provided to Corizon pursuant to the MSA, not including interest and attorneys' fees.

100. Corizon breached its contractual obligations by failing to pay the Obligations to Maxim that are due under the MSA.

101. As a direct and proximate result of Corizon's breach of the Agreement, Maxim is owed $4,937,284.91 for services Maxim provided to Corizon pursuant to the MSA, not including interest and attorneys' fees Maxim is entitled to pursuant to the provisions of the MSA.

## COUNT II — UNJUST ENRICHMENT

102. The allegations contained in the foregoing paragraphs are incorporated herein by reference as if specifically re-alleged herein.

103. Maxim provided Corizon with healthcare staffing services, which Corizon readily accepted and utilized in various correctional facilities throughout the United States.

104. Corizon failed to pay for the healthcare staffing services provided by Maxim.

105. Because of this failure, Corizon received and continues to receive, unfair benefits

17

Case 3:23-cv-00018   Document 1   Filed 01/10/23   Page 17 of 19 PageID #: 17

and has been and will continue to be unjustly enriched at the expense of Maxim.

106. Corizon must therefore be required to disgorge this unjust enrichment and/or to compensate Maxim in an amount totaling at least $4,937,284.91 plus interest and attorneys' fees.

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Issue proper process requiring Defendants to respond to the Verified Complaint;

2. Enter Judgment in favor of Plaintiff and against Defendants in the in the amount of $4,937,284.91 plus prejudgment interest, costs and attorneys' fees and post-judgment interest at the judgment rate until paid in full;

3. Award Plaintiff such other relief as the Court deems just and appropriate.

DATED this 10th day of January, 2023.

Respectfully Submitted,

**BAKER, DONELSON, BEARMAN CALDWELL & BERKOWITZ, PC**

s/ Erno D. Lindner
Erno D. Lindner (TN#29273)
633 Chestnut Street, Suite 1900
Chattanooga, Tennessee 37450
Phone  423.209.4206
Fax     423.752.9633
Email: elindner@bakerdonelson.com

***Attorneys for Plaintiff***

# VERIFICATION

I, _Neil M. Williamson_, a _Credit Manager_ of _Maxim Healthcare Staffing Services_ ("_Maxim_"), having first been duly sworn, and being authorized to make this statement, do make oath that I am an adult citizen competent to testify to the matters stated herein, that I have read the foregoing Verified Complaint and have examined the documents attached as Exhibits thereto, and that, based upon my personal knowledge of the facts stated therein and upon my review of the records of _Maxim_ that are kept in the course of its regularly conducted business activity, and that were made at or near the time of the occurrence of the matters set forth, the facts stated in the Verified Complaint are true, and the documents attached as Exhibits are accurate copies of the records of the regularly conducted activity of _Maxim_.

By: _[signature]_
Name: _Neil M Williamson_
Title: _Credit Manager_

STATE OF _Maryland_ )
COUNTY OF _Baltimore City_ )

Before me, _Jeremy Spalt_ ~~Neil Williamson~~, a Notary Public in and for the State and County aforesaid, personally appeared _Neil Williamson_, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged her/himself to be a _Credit Manager_ of _Maxim_, and that she as such officer, being duly authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by him/herself as such officer.

I certify under PENALTY OF PERJURY under the laws of the State of Tennessee that the foregoing paragraph is true and correct.

WITNESS my hand and seal at office, on this the _5th_ day of January, 2023.

_[signature]_
Notary Public

My Commission Expires: _6/10/2025_

19